## CLARENCE W. DEALTRY & others *vs.* SELECTMEN OF WATERTOWN & others.

Middlesex.   March 9, 1932. — March 30, 1932.

Present: RUGG, C.J., WAIT, SANDERSON, & FIELD, JJ.

*Contract*, Validity.  *Fraud.  Municipal Corporations*, Contracts, Officers and agents.  *Equity Jurisdiction*, Suit by ten taxable inhabitants. *Equity Pleading and Practice*, Bill, Demurrer.

General charges of bad faith, without allegations of fact sufficient to support them, are not admitted by a demurrer.

An allegation in the bill in a suit in equity, merely that the plaintiff is informed and believes that a fact exists, is not, upon demurrer to the bill, a sufficient allegation that it does exist.

Upon demurrer to the bill in a suit in equity under G. L. c. 40, § 53, against selectmen of a town and a contractor corporation whose bid for resurfacing a street they had accepted, it was *held*, that general charges in the bill of collusion and bad faith on the part of the defendants in awarding a contract were not supported by specific allegations in the bill of relationship of one of the selectmen to an officer of the corporation and that the selectmen were of the same political party as was another officer of the corporation who was a State committeeman of the party.

The bill, in such a suit in equity under G. L. c. 40, § 53, contained allegations that the selectmen, in soliciting bids for resurfacing a street, specified a certain patented material, that they were informed of the patent, but nevertheless awarded a contract in accordance with the specifications, that the work had been completed, but not paid for, and that the selectmen had exposed the municipality to the danger of costly litigation; and the plaintiffs sought to restrain the making of payments under the contract and to have the contractor ordered to remove the material placed upon the street.  A demurrer was sustained, and, on appeal by the plaintiffs, it was *held*, that

(1) The possibility that the municipality might become involved in litigation with the holder of the patent did not make the awarding of the contract an incurring of an illegal obligation contrary to said § 53: it was for the selectmen within the exercise of their discretion to decide what material should be used and whether there was any practical chance of successful litigation because of the use of the material selected;

(2) The municipality being under a legal obligation to make the payment under the contract, the payment should not be restrained in this suit.

(3) The demurrer properly was sustained.

BILL IN EQUITY under G. L. c. 40, § 53, filed in the Supreme Judicial Court for the county of Middlesex on October 27, 1931, and afterwards amended.

The bill as amended and demurrers thereto are described in the opinion. The demurrers were heard by *Crosby*, J., and were sustained on the first and fourth grounds. The single justice thereupon reported the suit for determination by the full court.

*C. W. Dealtry*, for the plaintiffs.

*A. Julian*, Town Counsel, for Selectmen of Watertown and others.

*A. Leonard*, for John P. Condon Corporation.

*H. Williams*, (*G. A. Furness & F. J. McNamara* with him,) for The General Crushed Stone Company.

SANDERSON, J. The plaintiffs are fifteen taxable inhabitants of the town of Watertown. The defendants are the selectmen, superintendent of streets, engineer, auditor and treasurer of the town, and the John P. Condon Corporation, the contractor. The General Crushed Stone Company, a corporation, was allowed to intervene as a party defendant. The three demurrers filed to the bill and amended bill were sustained on the first and fourth grounds and the questions raised by the demurrers reported to the full court. The demurrers are identical in the statement of the first ground, namely, that the plaintiffs "have not stated such a case as entitles them to any relief in equity against the defendants." Two of the demurrers are substantially in the same form in the statement of the fourth ground, namely, "That it appears by the plaintiffs' petition that in doing the acts complained of, the defendants Edward P. Furber, Eric L. Johnson, Clifford S. Lovell, Pierce P. Condon, Otis W. Allen, Willie W. Norcross, Jr., and Harry W. Brigham, were acting in the performance of the public duty imposed by law." The town officials in stating their fourth ground of demurrer have used the same language but added at the end the words "and within their discretionary powers."

The bill purports to be brought under G. L. c. 40, § 53, which reads as follows: "If a town or any of its officers or

agents are about to raise or expend money or incur obligations purporting to bind said town for any purpose or object or in any manner other than that for and in which such town has the legal and constitutional right and power to raise or expend money or incur obligations, the supreme judicial or superior court may, upon the petition of not less than ten taxable inhabitants of the town, determine the same in equity, and may, before the final determination of the cause, restrain the unlawful exercise or abuse of such corporate power."

A statement of facts, substantially as follows, may be found in the bill and amendment thereto: In 1930 the John P. Condon Corporation was awarded a contract for paving part of North Beacon Street in Watertown and laid the paving with material manufactured in and supplied from the quarries of The General Crushed Stone Company, a corporation having a usual place of business in the town of Winchester. A corporation operating in these quarries was in 1930 a licensee of the Amiesite Asphalt Corporation of America which then held and still holds a patent upon the materials used. In 1931 the town made an appropriation for extending the paving of North Beacon Street and also the paving of a part of Pleasant Street, and on September 24 and 25, 1931, the selectmen advertised for bids on the resurfacing referred to and specified "Winchester Non-Skid Bituminous Concrete Pavement," a material prepared and sold by the defendant The General Crushed Stone Company and which had been used in 1930 to resurface a portion of one of the streets. One of the nine bids was submitted by a man named McCue, who, instead of bidding on the "Winchester" material called for in the specifications, based his bid on a material called "Amiesite." McCue had attempted unsuccessfully to secure a price from The General Crushed Stone Company on the specified material. The selectmen rejected all bids, and on October 15 and 16, 1931, again advertised asking for bids for resurfacing portions of the two streets. This time they asked for bids on five types of specifications, the third of which, called "Type C," is alleged to be substantially and with-

out any material alteration the specification of the patented material of Amiesite Asphalt Corporation of America. The bids were publicly opened and read on October 23, 1931, as announced in the advertisements.   The John P. Condon Corporation was the lowest bidder, at eighty-five cents per square yard on "Type C," while McCue was the next lowest bidder, with a bid of ninety-four cents per square yard on "Type C."   Counsel for McCue thereupon filed with the selectmen a letter informing them that the Massachusetts Amiesite Co. was the only licensee of the Amiesite Asphalt Corporation of America entitled to sell "Type C" material in Watertown.   Thereafter, on the same day, the selectmen unanimously awarded the contracts to the John P. Condon Corporation, the lowest bidder, at eighty-five cents per square yard on said "Type C."   The selectmen, while admitting that they had notice from counsel for McCue of the patent situation, said that they doubted the validity of the patent and therefore awarded the contracts.   The validity of this patent is denied by The General Crushed Stone Company, which offered to furnish the selectmen with a bond protecting the town against any liability or loss from patent litigation.   The plaintiffs also stated that there has been collusion and favoritism in the awarding of the contracts to the John P. Condon Corporation;  that the selectmen have abused their power and exposed the town of Watertown and its taxpayers to the danger of costly litigation;  that the selectmen, the superintendent of streets, and the John P. Condon Corporation have acted in bad faith, and that the defendants are about to expend money and incur obligations purporting to bind the town of Watertown for purposes other than those for which the town has the legal and constitutional right to raise and expend money or incur obligations;  that the infringement of a patent is unlawful and in violation of the laws of the United States of America, for which the town may be held liable to the holder of the patent;  and that the work under the contracts has been completed, but payment has not been made therefor.

In their original bill the plaintiffs sought to restrain the

John P. Condon Corporation from constructing or laying the paving called for by contracts with the town, and the town officials from paying any money for the expense of furnishing or laying the materials in connection with the contracts with the town. Before the amended bill was filed the work of constructing the paving or resurfacing of the streets had been completed, and the prayers of that bill were that the John P. Condon Corporation be enjoined from making any claim or prosecuting any suit against the town for payment for services or materials furnished in connection with the contracts, that the Condon corporation and all defendants named as officials assisting in paying the corporation any sums on account of the contracts be ordered to return and pay to the town treasurer all sums so paid, and that the Condon corporation be ordered to take up and remove the material laid by it under the contracts on North Beacon Street and Pleasant Street.

The allegations in support of the charges of bad faith, collusion and favoritism are, in substance, that the superintendent of streets is the father of the treasurer of the defendant John P. Condon Corporation, and the father-in-law of the clerk of that corporation; that the selectmen are republicans, and the president of the John P. Condon Corporation is a member of the republican State committee; that the superintendent of streets refused to give a copy of the specifications to counsel for McCue unless counsel would state the name of the contractor whom he represented; that one of the selectmen had seen the correspondence of counsel for McCue with The General Crushed Stone Company and that the company had seen the correspondence of counsel for McCue with the selectmen; that the selectmen on the morning following the awarding of the contracts signed them without giving notice thereof to McCue or his counsel or to any of the plaintiffs or to the public; and that notwithstanding notice of a taxpayers' bill the work under the contracts was continued and completed by the contractor. Only facts well pleaded are admitted by the demurrer. Legal conclusions and evidentiary matter are not admitted. *Putnam* v. *Scahill*, 266 Mass. 537. General charges of bad

faith without allegations of fact sufficient to support them are not admitted by the demurrer. *Lothrop Publishing Co.* v. *Lothrop, Lee & Shepard Co.* 191 Mass. 353. An allegation that the plaintiff is informed and believes that a fact exists is not a sufficient allegation that it does exist. *Hadley* v. *Watson*, 143 Mass. 27. The facts alleged in support of the charges of collusion and bad faith are not sufficient to support those charges. See *Jenkins* v. *Andover*, 103 Mass. 94; *MacDonald* v. *Street Commissioners*, 268 Mass. 288. The mere fact of near relationship between the superintendent of streets and an officer of the contractor raises no presumption of impropriety. *Sylvester* v. *Webb*, 179 Mass. 236. *Seward* v. *Revere Water Co.* 201 Mass. 453.

The general aim of G. L. c. 40, § 53, has been said to be to furnish a prompt and effective remedy to restrain cities and towns from raising, borrowing or expending money for purposes not authorized by law. *Fuller* v. *Trustees of Deerfield Academy*, 252 Mass. 258. It "looks to the prevention of expenditures and the incurring of obligations which a town or city has no legal or constitutional right to make or enter into. It does not authorize the correction of wrongs wholly executed and completed . . . and except in extraordinary conditions, of which *Frost* v. *Belmont*, 6 Allen, 152, and *Welch* v. *Emerson*, 206 Mass. 129, are illustrations, the statute does not authorize an order for the return of past illegal payments." *Morse* v. *Boston*, 260 Mass. 255, 264. *Reilly* v. *Selectmen of Blackstone*, 266 Mass. 503. The town of Watertown had the right to raise and expend money and to incur obligations for the purpose of constructing or repairing public ways and for material used and labor employed thereon. G. L. c. 40, § 5 (4). The expenditure which by the terms of the statute may be enjoined is one "for any purpose or object or in any manner" which is illegal. There is no illegality alleged as to the appropriation or the manner of advertising for bids and it is alleged that the lowest bid was accepted and the contract let to the lowest bidder. The alleged infringements of patents which might expose the town to litigation by owners or licensees of the patents do not invalidate the contracts or

justify the restraining of their performance or any inter-
ference by the court under this bill with the payment of
money due under the contracts. A payment which the
town is under a legal obligation to make ought not to
be stopped by the court upon a taxpayers' bill. *Standard
Button Fastening Co.* v. *Harney*, 155 Mass. 507. *Edward
Thompson Co.* v. *Pakulski*, 220 Mass. 96. See *Avery* v.
*Halsey*, 14 Pick. 174; *Fox* v. *Rogers*, 171 Mass. 546. The
doing of an act which might involve the town in litigation
at the instance of the owner of a patent is not the incurring
of an obligation within the meaning of G. L. c. 40, § 53.
See *Davis* v. *County Commissioners of Hampshire*, 153 Mass.
218, 228; *Prince* v. *Crocker*, 166 Mass. 347, 362; *Higginson*
v. *Treasurer & School House Commissioners of Boston*, 212
Mass. 583. The plaintiffs have no interest in the patents
and cannot maintain a suit to protect them from infringe-
ment. See *Parsons* v. *Northampton*, 154 Mass. 410, 413.
It was for the town officials within the exercise of their dis-
cretion to decide what paving material should be used and
whether there was any practical chance of successful liti-
gation because of the use of the material selected. *Fisk* v.
*Springfield*, 116 Mass. 88. In *Seward* v. *Revere Water Co.*
201 Mass. 453, the court said that, on a taxpayers' bill,
even if the contracts were voidable neither the plaintiffs
nor the court could assume the functions of the town in the
matter of avoiding them. *Sylvester* v. *Webb*, 179 Mass. 236.
*Adams* v. *Townsend Schoolhouse Building Committee*, 245
Mass. 543. *Twombly* v. *Selectmen of Billerica*, 262 Mass.
214. Upon the allegations in the bill it has not been made
to appear that money is about to be expended illegally or
that any illegal obligation has been or is about to be in-
curred and no ground has been stated for ordering the
material laid removed. See *Powers* v. *City Council of Spring-
field*, 116 Mass. 84; *Noyes* v. *City Council of Springfield*,
116 Mass. 87.

*Decree affirmed.*