THOMAS N. ASHTON & others *vs.* TREASURER OF THE CITY
OF FALL RIVER & others.

Bristol.     May 17, 1934. — June 28, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, & FIELD, JJ.

*Municipal Corporations,* Waterworks, Finances.     *Fall River.     Equity
Jurisdiction,* Suit by ten taxable inhabitants.

The bill in a suit in equity by ten taxable inhabitants of Fall River,
begun in 1933 under G. L. (Ter. Ed.) c. 40, § 53, against the treasurer
and city council of that city, contained averments that the charges for
water were "disproportionate and unreasonable" and "contrary to the
constitutional requirement that there shall be levied 'proportional and
reasonable assessments, rates and taxes upon all the inhabitants'
thereof," and the prayer of the bill was that the defendants be enjoined
from "further use of . . . surplus water funds derived from the charge
of excessive and unreasonable water rates in payment for purposes for-
eign to water supply in said city." There was no averment of fraud
or collusion on the part of the defendants or that any change in the
existing water rates was contemplated. A demurrer to the bill was
sustained. On appeal by the plaintiffs, it was *held,* that
    (1) There was nothing in the bill to show that the defendants were
not acting in accordance with the authority conferred upon them by
St. 1931, c. 403, § 1, which provided that the balance, if any, of the
water receipts, after payment of certain specified charges in connection
with the water system, might be appropriated "for such other municipal
purposes as the city council may from time to time determine";
    (2) The question, whether the charges for water were or were not
reasonable, could not be considered nor determined in a suit in equity
under G. L. (Ter. Ed.) c. 40, § 53;
    (3) The demurrer properly was sustained.

BILL IN EQUITY, filed in the Supreme Judicial Court for
the county of Bristol on December 22, 1933, by ten tax-
able inhabitants of Fall River against the treasurer and
city council of that city, seeking relief under G. L. (Ter.
Ed.) c. 40, § 53. The prayers were that the defendants be
enjoined "from further use of said surplus water funds
derived from the charge of excessive and unreasonable
water rates in payment for purposes foreign to water sup-
ply in said city"; and for general relief.

The defendants demurred.  The demurrer was heard by *Donahue*, J., and was sustained.  By order of *Lummus*, J., a final decree dismissing the bill was entered.  The plaintiffs appealed.

*N. F. Smith*, for the plaintiffs.

*E. T. Murphy*, Corporation Counsel, for the defendants.

CROSBY, J.  This is a bill in equity brought by ten taxpayers of the city of Fall River to restrain the alleged use of surplus water funds for municipal purposes other than for the maintenance of the waterworks system of the city, and payments required to be made in connection therewith.

St. 1931, c. 403, § 1, provides that "During the period of the existence of the Fall River Board of Finance established by chapter forty-four of the acts of nineteen hundred and thirty-one, all money received by the city collector of the city of Fall River for water rates and charges shall be paid by him to the city treasurer and so much thereof as may be required shall be appropriated by the city council of said city for the following purposes: — For necessary expenses of maintenance, operation, repairs, extension and improvements of the water works system of the city; for payments of interest on water loans; for payments on account of sinking funds of water loans and payments of principal on said loans; and for the payment of costs and expenses incurred under chapter one hundred and fourteen of the acts of eighteen hundred and ninety-one and acts in addition thereto and in amendment thereof.  The balance, if any, after the payments for the aforesaid purposes may, during the period aforesaid, be appropriated for such other municipal purposes as the city council may from time to time determine, subject to the provisions of general law so far as applicable."  Section 3 of the act further provided that during the period of the existence of the Fall River board of finance, the operation of the provisions of any law inconsistent therewith should be suspended.

St. 1908, c. 320, § 1, provides that the water department of the city shall continue to be in charge of the Watuppa water board.  Section 2 of the act recites that "Said water board may set aside and use so much of the surplus from

the receipts of the water department as the board may deem proper, for the construction and maintenance of a water reservoir on the western shore of the North Watuppa pond, or of tanks in the city, to supply the city with water, in addition to the maintenance and extension of its water works plant and pumping station, and also for an emergency fund of not less than thirty thousand dollars, to be used in case of emergency, to renew or replace any part of the plant necessary to supply water for domestic or manufacturing purposes, or for the extinguishment of fires in the said city." Section 3 recites that "The city council of the city shall not pass any ordinance which would prevent or impair the exercise of the powers herein granted. And the provisions of this act shall have full force and effect, any ordinance to the contrary notwithstanding."

St. 1871, c. 133, § 17, provides that "The city council shall from time to time regulate the price or rent for the use of the water, with a view to the payment from the net income and receipts, not only the interest, but ultimately the principal of said debt so contracted, so far as the same may be practicable and reasonable . . . ."

In 1874 an ordinance was adopted by the city in pursuance of the provisions of St. 1871, c. 133. By the ordinances of the city in force up to November, 1907, it was provided that all receipts from water rates should be paid to the city treasurer and placed by him to the credit of the waterworks, and should be appropriated, first to the payment of the expenses of the management and repairs of the works; and then, in the order mentioned, to the payment of interest on the water loan, to pay for extensions within certain limits, for expenses to be incurred for the better protection and preservation of the water supply under St. 1891, c. 114, and under acts in amendment thereof, and finally to principal of the water loan. The history of the legislation relative to the water loan of the city was reviewed at length by this court in *Sinclair* v. *Mayor of Fall River*, 198 Mass. 248. In that case it was said at page 255 by Sheldon, J., speaking for the court: "The ordinance does not create any disproportionate burden of taxation. Those who take water from the city's works do so

voluntarily, and agree thereby to pay the rates as fixed from time to time by the city council. It is not necessarily to be regretted if the net income from the water rates shall be found temporarily to yield some profit over the expenses of maintaining them and providing for the cost of their construction. The provision in St. 1902, c. 393, § 23, cl. 15, that the water department of the city shall be under the charge of the Watuppa water board, does not of course take away the power of the city council to make appropriations for the expenses and dispose of the net income from the waterworks." St. 1931, c. 403, § 1, hereinbefore referred to, expressly provided that the balance if any of the water receipts might be appropriated "for such other municipal purposes as the city council may from time to time determine . . . ."

There is no allegation in the bill of fraud or collusion on the part of the defendants; or that any change in the existing water rates is contemplated. There is nothing to show that the defendants are not acting in accordance with the authority conferred upon them by statute. The bill does not allege that the existing water rates are to be increased. The principal complaint of the plaintiffs as shown by paragraph 9 of the bill is that the charges for water are "disproportionate and unreasonable" and "contrary to the constitutional requirement that there shall be levied 'proportional and reasonable assessments, rates and taxes upon all the inhabitants' thereof." There is no merit in any of these allegations. The question whether the charges for water are reasonable or otherwise cannot be considered or determined by a petition brought under G. L. (Ter. Ed.) c. 40, § 53. If the plaintiffs desire to contest the reasonableness of the charges they are required to do so by proper proceedings brought for that purpose.

It follows that the demurrer was properly sustained. The final decree dismissing the bill is affirmed.

*Ordered accordingly.*