Welch, J.
The present case came before the court upon the joint request of the parties for this court to issue a declaratory judgment as to whether or not a final injunction should issue prohibiting the defendant, City of Gloucester, from assessment of a betterment tax. This betterment would apply to individual homeowners and relate to the installation of the STEP sewer hook-up in a portion of Gloucester known as North Gloucester. At the hearing on this matter, the parties refined the issue before the court. The plaintiffs, who now after the recently allowed amendment to the complaint bring this action as a ten citizen suit (M.G.L.c.40, §53), argue that the betterment assessments must be enjoined because the Ciiy of Gloucester illegally contracted, designed and built this sewer system in violation of the ciiy charter. The defendant, Ciiy of Gloucester, vigorously disagrees and argues that the issue of violation of the ciiy charter is not before this court because it has already been ruled upon in this lawsuit by Federal District Judge William G. Young.
This lawsuit, while not old, is well traveled. It was initiated in this court and removed to the Federal District Court. Based upon a cogent decision, Federal District Court Judge Young issued a partial judgment, remanding those issues he did not decide back to this court. The plaintiffs are appealing Judge Young’s decision to the First Circuit Court of Appeals while also pursuing the remainder of the case in this court.
After reviewing the extensive briefs filed by the numerous parties in both the State and Federal Courts, and digesting Judge Young’s eloquently dictated decision in this matter, this court concludes that the plaintiffs are now precluded from raising the issue of compliance with the ciiy charter.
During the federal litigation, both sides vigorously argued the issue of whether the Ciiy of Gloucester violated its ciiy charter (particularly Section 5.4 and 5.5 which designated Design Selection and City Building Committees) when it contracted to build the STEP sewer in North Gloucester. The plaintiff argued extensively that this alleged failure to comply with the Gloucester ciiy charter rendered the existing consent decree null, void and unconstitutional. See, e.g., Memorandum in support of plaintiffs motion for preliminary injunctive relief (filedinFederalDistrictCourtinAugust, 1996), pp. 7-10; Plaintiffs’ reply to defendant, Commonwealth’s opposition (filed in Federal District Court, October 1, 1996), pp. 3-5. The opposing parties argued equally vigorously that the Ciiy had not violated its charter and that the plaintiffs (assuming they were considered a ten citizen lawsuit) had no standing to attack the already completed sewer construction. See Opposition of United States of America (filed in Federal District Court, September 16, 1996), pp. 14; Opposition of Ciiy of Gloucester (filed in Federal District Court, September 24, 1996) pp. 3-7. There was also extensive oral argument on this issue in Federal Court before Judge Young made his rulings. See e.g., Transcript pp. 7-13, pp. 16-18, pp. 21-25.
Judge Young addressed these issues in his decision. Analogizing this case to a ten citizen law suit brought pursuant to Chapter 40 §52 (which, with the recently allowed amendment, it now is), Judge Young found standing. See Transcript p. 52. Then he extensively discussed the precise underlying issue now raised by the plaintiffs, i.e., whether the City of Gloucester complied with Section 5-4 and 5-5 of the city charter in constructing the Gloucester sewer. After detailing the conflicting arguments, Judge Young did not resolve the merits of the argument “either in Cape Ann’s or City’s favor” and instead found that the plaintiffs could not press this argument in that, in such ten citizen lawsuits, “standing is afforded to challenge a municipal project only, before such obligations are incurred and are not afterwards.” Transcript, pp. 56-57, citing Kapinos v. Chicopee, 334 Mass. 196, 198 (1956), and Fuller v. Trustees of Deer-field. Academy, 252 Mass. 258, 260 (1925). Thus, although Judge Young did not resolve the difficult issue of whether the City had violated the city charter, *220 he did rule on this precise issue holding, in essence, that the plaintiffs were tardy in raising this argument. As all parties concede, the sewers have already been constructed and, as Judge Young ruled, the time for the plaintiffs to challenge such a municipal project is before the obligations were incurred (i.e., before the construction of the actual sewer and the incurring of the expense of the sewer). See Kapinos v. Chicopee, 334 Mass. 196, 198 (1956). See also, Fuller v. Trustees of Deerfield Academy, 252 Mass. 258, 260 (1925). Chapter 40, §53 has been strictly interpreted. The purpose of such ten citizen lawsuits “is solely preventive. It does not authorize the correction of wrongs wholly executed and completed. It does not include in its words redress of an evil which is past." Howard v. Chicopee, 299 Mass. 115, 120 (1937).
The plaintiffs claim that Judge Young’s decision only relates to whether the parties had standing to modify the consent decree by arguing that the city charter had not been complied with during the construction of the sewer. The plaintiffs urge that the federal decision leaves open the argument that the betterment tax cannot be assessed due to a violation of a city charter. There is some force to this argument. Chapter 40, §53 is phrased in the disjunctive (i.e. allowing suits when a municipality is “about to raise . . . money or incur obligations”). While the sewer is complete and the obligation incurred, the City is “about to raise” money to pay for the sewer via betterment assessments. Certainly Chapter 40, §53 permits ten citizens lawsuits filed by tax payers alleging an illegal assessment practice. Macioci v. Comm. of Revenue, 386 Mass. 752, 769 and n.31 (1982) (equitable relief pursuant to Chapter 40, §53 may be pursued before the tax assessment lists are committed to the tax collector).
Nevertheless, such an argument represents too expansive an interpretation of Chapter 40, §53 and too narrow a reading of Judge Young’s decision. After all, the plaintiffs argument, at heart, is that the city violated the city charter by not utilizing the two committees designated in §5-4 and 5-5 while designing and during construction of the STEP sewer. The time to attack that wrong was prior to the City incurring the obligation of payment for the sewer. This is precisely Judge Young’s holding. To permit the plaintiffs to now attack the city’s alleged violation of the city charter in constructing the sewer by way of enjoining payment for the sewers would undercut the reason why ten taxpayers suits must be filed before the city incurs the obligation. After all, the obligation now exists. If the city’s construction was illegal, then one would assume that any method of raising revenue to pay for this obligation — be it a betterment tax, a general property tax, or a sewer use fee — would all be defective. This is not a case where the plaintiffs are attacking the general method of assessment for raising money.[1] In such a case, the first time the alleged wrong is knowable and can be attacked is when the assessment is complete and its is about to be committed to the tax collector. See, e.g., Macioci, supra at 769. This is not such a case. Rather, the plaintiffs seek the proverbial second bite at the apple by first attacking the sewer project and then attacking the payment for the sewer project. To permit such a lawsuit would create an exception that would swallow the holding of Kapinos.
Should this ruling on issue preclusion and standing be incorrect, this Court- — on the merits — holds that the city did not violate the city charter in designing and constructing the sewer without the involvement of either the Designer Selection Committee (§5-4) or the City Building Committee (§5-5). Although it is not clear cut, the most reasonable interpretation of these broadly worded city charter provisions is that those sections apply only to the design and construction of buildings. These charter provisions must be interpreted against the backdrop of state legislation relating to public projects. State law makes a sharp distinction between public construction contracts for public buildings (Chapter 149 §44 A-H) as opposed to public works. (Chapter 30 §39M). Sewer construction plainly falls in the public works category and is not considered a public building. See Modern Continental Construction v. Lowell, 391 Mass. 829 (1984); M.G.L.c. 149, §44A. The Massachusetts Designer Selection Statute, M.G.L.c.7, §38K, which appears to be the statute which motivated the city charter amendment that created the §5-4 and §5-5 committees, relates to public buildings (not public works). Thus, the most sensible interpretation (and one which avoids issues of preemption and conflict with state procurement laws) is to interpret Sections 5-4 and 5-5 of the city charter as applying only to projects involving public buildings. Thus, the sewer construction did not run afoul of either city charter section.
As Judge Young recognized, the plaintiffs are still entitled to challenge any assessment of a betterment tax upon them. See, Federal Court Judgment dated October 28, 1996. Judge Young remanded any issues not decided by him and provided the example of “a claim that individual homeowners cannot be assessed a betterment for the installation of the STEP sewer system set-up.” What this refers to is the plaintiffs’ claims in their complaint that any assessed betterment would be excessive either in terms of the value of the sewers to the individual homeowners or excessive in that the assessment would pay for various items of general benefit to the City of Gloucester as a whole. These claims are still viable. Both sides, however, agree that any such claims challenging an allegedly excessive individual betterment assessment are best dealt with in an abatement process that already exists under State law.
Therefore, the plaintiffs’ request that the City not commit the North Gloucester sewer betterment to the City Treasurer or Tax Collector is denied. Assessments *221 of a betterment for the installation of the STEP system sewer hook-up may be made by the City. The individual homeowners are entitled to challenge any excessive betterment assessment through the abatement process.

That issue, to the extent it is plead in the complaint, relates to the excessive nature of the betterment tax. The parties agree that each individual homeowner should address that issue in an abatement proceeding.